DETROIT OSTEOPATHIC HOSPITAL *v.* JOHNSON.

1. CORPORATIONS—HOSPITALS—BYLAWS—TRUSTEES—INCORPORATORS.
   Bylaws of nonprofit hospital corporation which have been accepted and business carried on thereunder for 18 years will not be set aside merely because they may not have been adopted by incorporators while acting as such in accordance with articles of association but rather when same persons were meeting as trustees, nor because adopted when only 5 of 7 of the trustees were present, where such bylaws are not shown to have conflicted with the law as it existed at the time of incorporation or with the articles of incorporation.

2. SAME—BYLAWS—ADOPTION—INCORPORATORS.
   Provision of articles of association of nonprofit hospital corporation for adoption of bylaws "by the incorporators" is not invalid for failure of such term to include those associated with, and successors to, the incorporators.

3. SAME—TRUSTEES' ELECTION OF SUCCESSORS.

Bylaws of nonprofit hospital corporation which conferred upon trustees the right to elect their successors, which were not in conflict with statutes in force, articles of incorporation, or public policy, are valid.

4. SAME—TRUSTEES—ELECTION—BYLAWS.

Individual plaintiffs, successor trustees elected at regular annual meeting of board of trustees of nonprofit hospital corporation, at an election held in accordance with bylaws under which corporation had conducted its business for 18 years, *held*, validly elected rather than defendants, trustees elected by members of corporation at a meeting held even subsequent to date as fixed for their election under bylaws subsequently adopted by such members.

5. SAME — BYLAWS — AMENDMENT — ARTICLES OF INCORPORATION — STATUTES.

Where statute under which nonprofit hospital corporation was organized and its articles of incorporation provided that bylaws were to be adopted by incorporators, and such were thereafter adopted by 5 incorporators while acting as 5 of the 7 trustees, such bylaws which affected the management and execution of the trust incident to which the corporation was organized and provided for their own amendment would be binding upon all parties affiliated with the organization then and subsequently except as such bylaws might be contrary to public policy (Act No. 171, § 2, Pub. Acts 1903).

6. SAME—BYLAWS—PUBLIC POLICY.

In determining whether or not bylaws of nonprofit hospital corporation violate public policy, a court must be mindful of the facts and circumstances surrounding the inception of the corporate activity and purposes sought to be accomplished.

7. EQUITY—JURISDICTION—TRUSTS.

Jurisdiction over the control and execution of trusts is in general vested in the equity courts.

8. CORPORATIONS — HOSPITALS — TRUSTEES — SUCCESSION — BYLAWS — AMENDMENT.

Provisions of bylaws relative to succession of trustees of nonprofit hospital corporation which gave the trustees power to name their own successors and to adopt and amend bylaws which were not contrary to statute under which corporation was organized nor to articles of incorporation were not void as contrary to public policy (Act No. 171, Pub. Acts 1903).

9. SAME—ARTICLES OF INCORPORATION—BYLAWS—TRUSTS—EQUITY.
   Articles of incorporation and bylaws of nonprofit hospital corporation which provided that management was to be vested in a self-perpetuating board of trustees and that members, consisting of osteopathic physicians and lay contributors, might make recommendations at meetings which trustees should call once each calendar year, as adopted by original incorporators had such a trust nature as to permit invocation of equitable protection to preserve assets and insure that its conduct be not inconsistent with the articles of incorporation and original bylaws.

10. INJUNCTION — NONPROFIT HOSPITAL CORPORATION — MATERIAL CHANGE OF ORGANIZATION BY MEMBERS.
   Change of bylaws and articles of incorporation by members of nonprofit hospital corporation to alter method of selecting board of trustees in which original incorporators lodged the management of the organization from that of self-perpetuating type originally provided to selection by members who were osteopathic physicians and lay contributors *held,* a material change by the members, not provided for by the original incorporators, calling for injunctive restraint from interference with trustees duly elected in accordance with original bylaws and articles of incorporation.

Appeal from Wayne; Spier (James E.), J., presiding. Submitted June 22, 1939. (Docket No. 23, Calendar No. 40,520.) Decided September 5, 1939.

Bill by Detroit Osteopathic Hospital, a Michigan corporation, and others against Albert C. Johnson, Frederick J. Haynes, J. Chaney and others to determine who are duly elected and qualified trustees, for an injunction and other relief. Cross bill by all defendants except Haynes and Chaney against plaintiffs to determine duly elected and qualified trustees, for an injunction and other relief. Decree for plaintiffs. Defendants appeal. Affirmed.

*Oxtoby, Robison & Hull* (*Harold W. Hanlon,* of counsel), for plaintiffs.

*Ellsworth G. Smith* and *Hallet B. Frisbie,* for defendants.

NORTH, J.   Primarily this is a suit in equity to determine whether the seven individual plaintiffs were, as they allege, the directors of plaintiff corporation at the time suit was instituted (January 29, 1938); or whether seven of the defendants were such directors.   Injunctive relief is also sought.   Defendants (excepting Haynes and Chaney) filed a cross bill, but this cross bill does not materially affect the issues to be litigated.   The relief sought by plaintiffs was granted.   Defendants have appealed.

Plaintiff corporation, the Detroit Osteopathic Hospital, was organized in 1919 under Act No. 171, Pub. Acts 1903, as amended (2 Comp. Laws 1915, § 9054 *et seq.*).   Only two of the five incorporators who constituted the first board of trustees were living at the time this suit was heard in the circuit court, and neither of them is a party to this litigation.   The act under which the corporation was organized has been repealed (see Act No. 84, Pub. Acts 1921 [2 Comp. Laws 1929, § 9943 *et seq.*]; and Act No. 327, § 191, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 10135-191, Stat. Ann. § 21.192], which repeals Act No. 84, Pub. Acts 1921), but its repeal is not controlling of decision herein.   Plaintiffs allege that at and prior to the time of bringing suit the seven individual plaintiffs were the directors of the corporation and were actively in charge of its affairs.   Defendants admit plaintiffs were in charge, but not lawfully.   The corporation is a nonprofit organization and the purposes for which it was formed are set forth in its articles of association as follows:

"Article 2.   The purpose or purposes for which it is formed are as follows: To construct, complete, establish, equip, maintain and conduct a hospital for the treatment, care and relief of the indigent sick

and other sick, infirm and injured persons; and for the care and treatment of maternity cases; and for the study of the cause, nature, prevention and cure of the various diseases and the dissemination of knowledge relating thereto, and the erection, equipment and maintenance of all buildings and laboratories necessary or incidental thereto; and to establish in connection therewith a school for instruction in nursing and hygiene.''

The corporation owns and conducts a hospital and nurses' home in Highland Park, Wayne county, Michigan. There are no stockholders. Its original membership consisted of five individual organizers who were named in the articles of association as trustees or directors. On December 22, 1919, the number of trustees or directors was increased to seven by an amendment to the articles of association duly recorded. Article 7 of the articles of association reads:

''The qualifications required of officers, trustees and members, their duties and the method of becoming a member and of filling vacancies of officers and trustees, and the regulations and rules governing the general conduct of the affairs of this corporation, the accomplishment of its purposes and the care of its property shall be prescribed by the bylaws hereafter enacted by the incorporators not inconsistent with law or with this act.''

Pursuant to article 7 the organizers of the corporation adopted bylaws; and we quote in the margin hereof* portions of the bylaws which have

---

* ''Article 2

''Members and Meetings of Members.

''SECTION 1. The members of this corporation shall consist of all osteopathic physicians and other persons who have contributed to its financial support, as appears from the records of the corporation.

''SEC. 2. Meetings of members may be called at such time and place as the board of trustees shall determine, provided that at least one meeting of members shall be called in each calendar year for the purpose of stimulating interest in the affairs of the corporation

a material bearing upon decision of this appeal.   No
attempt to amend these original bylaws was made

and to give the members an opportunity to make recommendations
to the board of trustees as to the management of the corporation. * * *

"SEC. 4.   The secretary shall keep a list of members and their last
known postoffice addresses in a book provided for that purpose. * * *

"Article 3

"Trustees.

"SECTION 1.   The affairs of this corporation shall be managed
by a board of seven trustees, and at least four members of the board
of trustees shall be osteopathic physicians in good standing.   The
first board of trustees has been appointed by the incorporators and
named in the articles of association, as required by law, and shall
hold office until the regular annual meeting of trustees in the year
1921, when they shall elect their successors, provided all trustees
shall continue to hold office until their successors are elected and
qualify. * * *

"SEC. 4.   The remaining members of the board of trustees, if a
quorum, shall have power by election at any regular or special meet-
ing of the board of trustees to fill any vacancy which may happen
in the board of trustees by death, resignation or otherwise. * * *

"SEC. 5.   The board of trustees shall elect or appoint all the
officers of the corporation.   The first regular officers of the corpora-
tion shall be elected at the first meeting, to be held by the trustees
on the —— day of December, 1919; thereafter the board of trustees
shall elect the officers of the corporation at a meeting to be held
on the third Tuesday in January in each year, beginning with the
year 1921. * * *

"SEC. 7.   The regular annual meeting of the board of trustees
shall be held on the third Tuesday in January of each year. * * *

"SEC. 11.   The order of business at the annual meeting of the
board of trustees and so far as practical at all other meetings of the
board of trustees, shall be as follows:

  1.  Calling of roll.
  2.  Proof of notice of meeting.
  3.  Reading and disposal of any unapproved minutes of former
      meetings.
  4.  Reports of officers and committees.
  5.  Election of trustees.
  6.  Election of officers.
  7.  Unfinished business.
  8.  New business.
  9.  Adjournment. * * *

"Article 6

"Amendment.

"These bylaws or any of them may be altered, amended, added to,
or repealed by the board of trustees at any regular or special meeting
of such board, provided the notice of such meeting shall contain
notice of such proposed change, or provided such meeting shall be
held by the consent in writing of all the members of the board of
trustees."

until plaintiff trustees took such action at their regular monthly meeting held January 18, 1938. We do not consider the action then taken material to decision herein, though the amendments then adopted removed conflicting provisions from the original bylaws and made them more definite. The instant controversy had its inception at a meeting of the members of plaintiff corporation held January 20, 1938. What there transpired is alleged in the bill of complaint as follows:

"At such meeting an attempt was made by some of the members at the instigation of said conspirators unlawfully and illegally to amend the bylaws of plaintiff, Detroit Osteopathic Hospital, said bylaws being subject to amendment only by the trustees and not by the members. At said meeting the presiding officer, the same being President Dr. Ellsworth A. Haight, declared out of order a motion by a member present for the adoption of proposed amendments to the bylaws of plaintiff, Detroit Osteopathic Hospital, and thereafter said meeting adjourned.

"Following the adjournment of the meeting of said members, and at the instigation and urging of said five defendant conspirators, certain persons, claiming to be members of said Detroit Osteopathic Hospital, without right and without warrant of law, undertook to adopt resolutions amending the articles of association and the bylaws of Detroit Osteopathic Hospital and to elect trustees. Said members undertook by amendment to the articles of association of said hospital to provide that the trustees of said hospital should be elected by the members, and by amendment to said bylaws to provide for a board of trustees to consist of seven lay members who should be elected annually for a period of one year by the corporation, and thereafter undertook to elect the following named seven defendants: Jean Chamberlain, Ellsworth G. Smith, Frederick J. Haynes,

Alvin I. Morris, J. Chaney, Joseph Thomas and George Rumford, as trustees of plaintiff, Detroit Osteopathic Hospital. Plaintiffs aver that all amendments attempted by said members to be made to said articles of association and said bylaws were unlawful and illegal, and also null and void, and that the attempted election of said last named seven defendants as the trustees of said plaintiff, Detroit Osteopathic Hospital, was also illegal and void and of no effect.''

Appellants assert that plaintiffs, in an effort to thwart action by the members, unlawfully attempted to adjourn the meeting of the members by the presiding officer (plaintiff Dr. Haight) ruling that a motion to adjourn was carried when in fact it was not carried; and after the individual plaintiffs and some other members had left the meeting, those members of plaintiff corporation who remained, being more than a quorum, designated other presiding officers and proceeded to take legal action by which the members amended the articles of association, adopted amended bylaws, and in accord therewith elected as directors seven of the defendants herein.

1. Validity of bylaws. Appellants' contention that the original bylaws, because they were not legally adopted and are contrary to public policy, were not binding upon the members of the corporation at the time of the acts here in controversy cannot be sustained. It is asserted by appellants that these original bylaws are invalid because they are shown by the corporate records to have been adopted at a meeting of the trustees or directors instead of a meeting of the same persons as incorporators as provided in the articles of association; also for the reason that only five of the directors or trustees were present at the meeting when in fact there were

seven trustees and the waiver of notice of such meeting was not signed by the two absent trustees. Further that the provision in the articles of association for adopting bylaws ''by the incorporators'' is invalid unless it includes those associated with and the successors to the original incorporators; and particularly if (as plaintiffs contend) the bylaws provide for a self-perpetuating body of trustees or directors, they contravene public policy (considered later herein) and are invalid. These and other of appellants' objections are without avail, if for no other reason, because the incorporators and the subsequent officers and members of this corporation for approximately 18 years accepted these bylaws and carried on the business of the corporation under them. To brush them aside now would produce in the corporation's affairs a chaotic condition incompatible with equity or good conscience. The original bylaws under which the corporate business has been conducted are not shown to have conflicted with the law as it existed at the time of incorporation or with the articles of incorporation. Appellants' objections to the bylaws for the most part are technical and must be disregarded, and the bylaws under which this corporation has heretofore functioned held to be valid. In so holding we are mindful of the conflicting provisions in the bylaws from which a contention has arisen as to whether the trustees are vested with power to elect their own successors or whether such power of election is vested in the members of the corporation. Notwithstanding these conflicting provisions, we consider the right to elect successors was in the trustees. At the time the corporation was organized there was no statutory provision nor acknowledged public policy which forbade adoption of bylaws empowering trustees or directors to designate their own successors. We know of

no decision holding that such a bylaw provision is invalid unless it contravenes the articles of association or statutory law. Like provisions have been embodied in statutes, especially those providing for nonprofit corporations. For example the following provision:

"The various classes of the board of trustees of the Mount Sinai Hospital, as now constituted, shall continue in office until the expiration of their respective terms, and the successors of said respective classes shall be elected by a majority vote of the remaining members of the board of trustees annually upon the expiration of the terms of said respective classes." Laws of New York, 1925, chap. 17.

2. Election of trustees. In accord with the corporation bylaws the trustees held their annual meeting on the third Tuesday in January, 1938, i. e., January 18, 1938. All seven trustees were present. They proceeded in accord with the existing bylaws to the "election of trustees" and the record discloses the election of the individual plaintiffs as trustees. They were elected for the period of one year and until their successors were elected and qualified. They were subject to removal for cause after hearing, not otherwise. Even under the new bylaws which defendants assert were adopted on January 20, 1938, at a meeting of the corporation members, plaintiff trustees could not be removed by the attempted election on that date of successor trustees. This is true because the bylaws defendants allege were then adopted provided that trustees or directors "shall be elected by the members of the corporation at the annual meeting of members, to be held on the 2d Tuesday of January of each year." The second Tuesday of January, 1938, had already passed. Obviously this new bylaw provision could not be operative, if at all, until the annual meeting

in 1939. The attempt to elect trustees or directors on January 20, 1938, under the circumstances, was wholly ineffectual and void. The trial judge was right in holding that the defendants who are alleged in the cross bill to be directors of the corporation were not so in fact or law; but on the contrary the individual plaintiffs herein were the duly elected trustees.

3. Power to amend bylaws. To plaintiff corporation and others of like character the important question presented is whether in a corporation organized in the manner and for the purposes of plaintiff corporation the so-called members (nonstockholders) have power to amend the bylaws in a manner which materially affects the management and execution of the trust incident to which the corporation was organized. Or, as plaintiffs assert, does the character of such a nonprofit corporation partake so much of the nature of an express trust that those who affiliate subsequent to its organization and the adoption of bylaws are bound by the conditions thereby imposed by the founders or original incorporators insofar as such conditions and limitations do not conflict with law or the articles of association. The statute under which this corporation was organized and also its articles of association designate those who are to control the corporation's activities as *trustees* or directors. And the statute contains the following provision:

"The certificate (of incorporation) may also contain any other provision for the *regulation* of the business and *conduct* of the affairs of the association, *and any limitation or regulation of powers of the corporation, and of its officers and members,* not inconsistent with law or with this act, which the *incorporators* may choose to adopt." Act No. 171, § 2, Pub. Acts 1903 (2 Comp. Laws 1915, § 9055).

We have already quoted article 7 of this corporation's articles of association. Therein it is provided that the incorporators were to enact bylaws which prescribed the qualifications of trustees, "and the regulations and rules governing the general conduct of the affairs of this corporation, the accomplishment of its purposes and the care of its property, et cetera." Article 6 of the bylaws adopted by the incorporators provides:

"These bylaws or any of them may be altered, amended, added to, or repealed by the board of trustees at any regular or special meeting of such board."

It is not claimed that the original bylaws violated any statutory provisions then a part of the law of this State or that they contravened the articles of association. Like provisions as to enacting and amending bylaws will be found in certain corporation statutes then in force. See 3 Comp. Laws 1915, § 10842. So unless public policy is transgressed by the controverted provisions of the original bylaws no reason appears for not requiring conformity thereto.

4. Public policy. In considering the issue from the standpoint of public policy a court must be mindful of the facts and circumstances surrounding the inception of this corporate activity and the purpose or purposes sought to be accomplished. In this connection it is important to note again that we are concerned herein with a nonprofit corporation; further, that its members do not by any means have the status or rights of stockholders in an ordinary business corporation; and also that so far as disclosed by this record none of these individual litigants have made any appreciable financial investment in or contribution to this corporation. It now possesses prop-

erty said to be of a book value of approximately $400,000, subject, however, to a mortgage incumbrance of substantially $90,000. There is uncontradicted testimony that recent extensive additions to the buildings and equipment of this corporation have been "financed primarily by earnings from the hospital and some donations;" and it is a fair inference that this corporation is operating rather extensively in the field of its activities. Seemingly this case at bottom is merely a contest as to which of two litigating groups shall control this corporate institution which in its locality obviously is a valuable adjunct to the practice of osteopathy.

If otherwise there was room for doubt as to the plan and intent of the original members of this corporation to vest its control perpetually in the trustees rather than in the membership, such plan and intent quite conclusively appear in article 2, § 1, of the original bylaws. "All osteopathic physicians and other persons who have contributed * * * financial support, as appears from the records of the corporation" are members; but article 2, § 2, of the bylaws merely provides that the trustees shall call a meeting of the members at least once "in each calendar year." This provision rather definitely limits the power of the members of this nonprofit corporation to merely making "recommendations," and has placed the actual "management" of the corporation in the trustees. In this connection it may be noted there is no provision in the bylaws for an annual meeting of the membership, such as is commonly provided for stockholders in ordinary business corporations. Instead it was left to the trustees to determine when membership meetings should be called with the provision that at least one such meeting should be called sometime in each calendar year. However, reference is made

in another section of the bylaws to such meeting as an "annual meeting." See bylaws, art. 3, § 9.

The obvious trust nature of this corporate undertaking and the occasion for such a plan for its execution as was adopted by those responsible for its creation are evidenced by the history of its origin. A group of osteopathic doctors originated this hospital activity, at least such is the assertion of defendants. Some members of the profession made substantial donations. How much was actually paid does not appear. But contributions were also sought and obtained from laymen. One of the defendant's witnesses referred to one of the lay contributors, Philip H. Gray, as "our benefactor." Unquestionably Mr. Gray was the principal donor. He contributed the present site of the hospital and the original building thereon. He donated many thousands of dollars to the starting, equipping and maintenance of this hospital. He joined with four members of the osteopathic profession as the original incorporators of the Detroit Osteopathic Hospital. These five men constituted the first board of trustees or directors, and Mr. Gray was the active trustee in formulating the original bylaws adopted by these incorporators acting as the original board of trustees. Mr. Gray continued as a member of the board and as a financial benefactor to this corporation until his death November 25, 1922. There is no doubt that he and the other donors intended that the use of the property and the contemplated activity of this corporation should be purely eleemosynary and a contribution to the general welfare of the community, and that it should be carried on in a manner not inconsistent with the articles of association and the original bylaws.

Under the facts of this case clearly it would be highly inequitable and destructive of the original

plan for carrying on this trust activity to deny the injunctive relief sought by plaintiffs and thereby permit the corporation's destiny as well as its present tangible assets to be taken over by a much larger and less selective group of individuals than that designated by the original incorporators. While it might have been wiser to have embodied in the articles of association, rather than in the original bylaws, the self-perpetuating provision as to the governing body, nonetheless that part of the original set-up is so clearly a fundamental element of the plan of the original founders of this trust that it should be protected and preserved by equity. Especially is this true since jurisdiction over the control and execution of trusts is in general vested in the equity courts. *Ledyard's Appeal,* 51 Mich. 623; *Wheeler* v. *Ocker & Ford Manfg. Co.,* 162 Mich. 204. A material change in this provision of the bylaws should be and is perpetually enjoined; and also for the reasons hereinbefore noted defendants' attempted amendment of article 5 of the articles of association,* which would materially change the control and execution of this trust, should be and is held to be invalid, and defendants should be and are enjoined from amending the articles of association in such a manner as will prevent the present trustees and their successors from exercising control of the execution of this corporate trust. The decree entered in the circuit court is affirmed, with costs to appellees.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.

* An amendment similar to that of the bylaws quoted in lines 6 to 4, from bottom of page 292, *ante.*—REPORTER.